
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
98 NOV 19 PM 3:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| DESIGNER PLASTICS, INCORPORATED, a corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV-98-AR-1026-M |
| TAMPOPRINT GMBH, a corporation; TAMPOPRINT INTERNATIONAL CORPORATION, a corporation; ACE TRANSPORTATION, INC. a corporation, et al., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

ENTERED
NOV 19 1998

**MEMORANDUM OPINION**

The court has before it a Motion for Reconsideration by defendant, Tampoprint, GmbH ("TP"). By an order dated October 21, 1998, this court denied TP's Motion to Dismiss. TP sought enforcement of a forum selection clause contained in the standardized fine print on the back of documents it purportedly forwarded to plaintiff, Designer Plastics, Incorporated ("DPI"), after specific terms had already been negotiated for the purchase by DPI of a color printing machine from TP. The disputed forum selection clause specifies Stuttgart, Germany as the proper forum for disputes arising out of the purchase contract. This court determined that TP failed to provide the standardized contract terms prior to DPI's receipt, acceptance, and payment for the

equipment, and that enforcement of the forum selection clause would therefore be unreasonable under the circumstances.

TP moves this court to reconsider its decision, suggesting that the court may have misinterpreted the dates on one or more documents, because German dates are usually written in day-month-year format, in contrast to the American convention of writing dates in month-day-year format. Had the court properly read certain German-formatted dates, TP suggests, the court would have found that TP did in fact provide timely notice to DPI of the disputed forum selection clause. The court has reviewed the documents on record and makes the following findings:

Exhibits G and H, which are attached to the Second Affidavit of Albrecht Riess, General Manager of TP, are addressed to Tampoprint International Corporation ("TIC") in Vero Beach, Florida, not to DPI in Arab, Alabama. TIC acted as a business intermediary for this transaction, and Riess apparently expected TIC to forward the documents to DPI. However, the affidavit of Ingrid Josiger, who served as TIC's Office Manager during the material time period, makes certain that these documents "were never sent by [TIC] to [DPI]." The affidavits of Teresa Spann and Randy Mosley confirm that DPI never received such documents. Therefore the court finds that the forum selection clause contained within the fine print on the back of these documents was *never* actually provided to DPI, either in timely or untimely fashion.

Unlike Exhibits G and H, Exhibit F to the Second Affidavit of Riess ("Exhibit F") is actually addressed to DPI in Arab, Alabama. Although the recent affidavit of Teresa Spann, dated November 7, 1998, states that DPI has a mailing address different from Exhibit F's addressee, thus suggesting that Exhibit F was mailed to the wrong place, DPI has already admitted receipt of this document. In its <u>Supplemental Brief in Opposition to Defendant's Motion to Dismiss</u>, DPI states:

> [O]n September 4, 1996, almost two (2) months after the machine was delivered and after final payment was forwarded to [TP], [TP] sends a document which indicates that [DPI's] final payment has been received by it. See Exhibit F of Second Affidavit of Albrecht Riess... This is the first document received by [DPI] relative to this transaction which contains a forum selection clause and choice-of-law clause. *Id.*, at 8-9.

In its initial consideration of TP's Motion to Dismiss, the court followed the suggestion of DPI and interpreted the date on Exhibit F as if it had been written in the month-day-year format. As a result, the court read "09-04-96" and "09.04.96" as September 4, 1996. Because it initially appeared to the court that this document alone, among those containing the forum selection clause related to this transaction, was actually received by DPI, it followed that TP had never actually provided the disputed contract terms to DPI until *after* delivery, receipt, acceptance, and payment. On the basis of that determination, the court found

enforcement of the forum selection clause to be unreasonable under the circumstances, and therefore the Motion to Dismiss was denied.

Having reviewed Exhibit F, it now appears to the court that the dates contained on that document were indeed misread. Contrary to DPI's insistence, the dates on the documents in Exhibit F are written in day-month-year format, according to the German convention. The court acknowledges that not all documents related to this transaction were dated in this format, as proved by the ample number of TP letters and faxes, submitted as evidence by DPI, which are clearly dated in month-day-year format. However, the court is not concerned with the manner by which other documents were dated. That the date "09-04-96" is German-formatted is clear by the fact that the several documents in Exhibit F each elsewhere contain the date "29-03-96", which is surely the German format for March 29, 1996. Furthermore, after examining all of the numerous computer-generated TP forms on record which resemble the forms in Exhibits F, G, and H, the court finds that these <u>uniformly</u> employ the day-month-year format when listing dates. It would indeed be strange if the computer generated forms in Exhibit F alone were printed differently. As a result, the court concludes that Exhibit F, which DPI admits having received, was issued by TP on April 4, 1996, not later in September. This conclusion is further supported by the Third Affidavit of Riess, which asserts April 4, 1996 as the proper reading.

This means that the court's earlier conclusions were mistaken; TP actually provided notice to DPI of the desired boilerplate provisions, including the forum selection clause, prior to delivery, prior to receipt, prior to final acceptance, and prior to final payment. The court now agrees with the summary provided by TP that "it is clearly established that DPI had notice of the disputed terms and conditions for more than two months before it came to Germany and inspected and accepted the machine, for three months before the machine was delivered, and for over five months before it made the final payment for the machine."

As a result of these findings, the court now views the circumstances surrounding this dispute as more directly analogous to Carnival Cruise Lines v. Shute, 499 U.S. 585, 111 S. Ct. 1522 (1991)("Carnival Cruise Lines"), and Harden v. American Airlines, 178 F.R.D. 583 (M.D. Ala. 1998)("Harden"). In both cases, plaintiffs were issued cruise tickets. On the front of each ticket were statements notifying the ticket holder that additional contract terms could be found on either the back or the latter pages of the tickets. The fine print contract terms included, in each case, a forum selection clause.

In *Harden*, the plaintiffs were given an invoice and order confirmation *prior to rendering payment* which contained "TERMS AND CONDITIONS OF PASSAGE," warning that "Passengers are advised to read these terms and conditions. This is a legally binding agreement between you and American Hawaii Cruises." Plaintiffs

- Page 5 -

argued that the tickets' additional terms could not be binding because plaintiffs did not sign them. Nevertheless, Judge Albritton found that the *Harden* plaintiffs were given notice of the forum selection clause at a time when plaintiffs still had an opportunity not to accept performance, and that by virtue of plaintiffs' acceptance of passage on the cruise line, plaintiffs accepted the boilerplate contract terms, despite the fact that they had not signed them. According to Judge Albritton, "The clause on the ticket took force with use of the ticket, not with the signature." *Harden*, at 587.

Similar to the circumstances in *Harden*, DPI was provided notice of the boilerplate contract provisions at a time when it still had an opportunity to prevent performance by TP, since the color printer had not yet been shipped. However, unlike the plaintiffs in *Harden*, DPI had made a down payment before receiving the April 9, 1996 Order Confirmation and Invoice.[1] Before the *Harden* plaintiffs made any payment, they were placed on notice that standardized contract terms would apply, even if they did not yet know what those terms were. In the present case, the evidence

---

[1] Contrary to DPI's suggestion, the April 4, 1996 "Invoice", which forms part of Exhibit F, does not indicate that DPI's <u>final</u> payment had been received. Instead it clearly labels the payment received as "1/3 DOWN PAYMENT" and reports the total amount paid as "[DM]186.083,00", which would be consistent with the contract terms calling for 1/3 payment upon order, 1/3 upon approval and acceptance of the machine at the factory in Germany, and 1/3 due upon delivery and acceptance in Alabama. (Note that German numbering inverts the comma and period as used in American numbering convention. Thus "DM 186.083,00" would be re-written in English as "DM 183,083.00".)

on record confirms that DPI was provided standardized, boilerplate terms, in additional to terms specifically negotiated for this transaction, only after the first installment was paid.

In that respect, DPI's circumstances are more similar to *Carnival Cruise Lines*, in which the U.S. Supreme Court upheld a forum selection clause, printed on the last pages of multi-page tickets, which were provided to plaintiffs only after <u>full</u> payment was made to a travel agent.  The Court stated, "As an initial matter, we do not adopt the Court of Appeals' determination that a non-negotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining."  *Carnival Cruise Lines*, 499 U.S. at 593.  The Court noted that there were several policy reasons for upholding such clauses, such as the legitimate interest of the cruise line in limiting the fora in which it could be sued, the interests of judicial economy served by not always having to litigate the proper forum for a case, and the probable decreased costs to consumers brought about by the certainty of a specific forum for potential disputes.

All of these interests would be served by upholding a forum selection clause such as the one currently under examination.  Not only does TP have a financial interest in limiting the locations where it can be sued, but the economic benefits it may derive from a certain forum undoubtedly translate into potential economic advantages for its customers like DPI.  If the federal courts

generally express a strong inclination to enforce forum selection clauses, much pre-trial motion practice, like the present circumstances, will be unnecessary and effectively discouraged, and therefore judicial economy will be facilitated.

On the basis of this court's reconsidered findings, and given the authority of *Carnival Cruise Lines*, which compels enforcement of the boilerplate forum selection clause despite lack of notice prior to payment, the court now finds that it would *not* be "unreasonable under the circumstances" to enforce the forum selection clause. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972). DPI had notice prior to delivery, prior to receipt, prior to final acceptance, and prior to final payment. Just as Judge Albritton held that "[t]he Plaintiff who failed to sign the ticket would still be bound by it, because he accepted passage on the ship," *Harden*, at 587, this court now holds that DPI will be bound by the disputed forum selection clause, despite the fact that it did not explicitly negotiate for or sign such a clause, because it affirmatively approved the machine in Germany prior to its shipment, because it continued to make payments, and because it failed to object to such terms, all after notice of TP's standard terms and conditions was provided in April, 1996. DPI, a sophisticated business entity with resources apparently sufficient to purchase a machine such as the one at the heart of this dispute, will not be deprived of its day in court if

required to litigate in the fair and competent tribunals of Germany.

For these reasons, the court finds that TP's Motion for Reconsideration is due to be granted, and the court's earlier order denying TP's Motion to Dismiss is due to be vacated. That Motion to Dismiss is due to be granted. A separate and appropriate order will be entered.

DONE this 19th day of November, 1998.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE